UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

COMMUNITY LIVING CORPORATION,

    Plaintiff

**ROBINSON**

COMPLAINT

**07 CIV 10463**

-against-

BOARD OF DIRECTORS OF BEDFORD
PLAZA TENANTS CORP. and BEDFORD
PLAZA TENANTS CORP.,

    Defendants

------------------------------------------------------------X

## INTRODUCTION

1. Last year, plaintiff Community Living Corporation, ("Community Living"), an agency providing housing to people with disabilities, filed a Federal Fair Housing Act action in this Court against the defendants Board of Directors of Bedford Plaza Tenants Corp. ("Board of Directors") and Bedford Plaza Tenants Corp. seeking an order directing the Board of Directors to approve the sale of a co-operative unit at 50 Barker Street, Mount Kisco, New York to Community Living. The action was settled and the Board of Directors, which initially opposed the sale, agreed to approve the sale of the unit to Community Living. However, apparently unhappy that it had agreed to the sale of the unit to Community Living, the Board of Directors has engaged in a series of harassing actions against Community Living, to the point where the

1

Board of Directors is attempting to evict Community Living and its residents from one of its units (Unit 635) largely based on the baseless claims of a neighbor who does not want to live with people with disabilities and on claims upon which other Bedford Plaza tenants are not being evicted. The Board of Directors' attempt to evict Community Living from one of its units is both discriminatory and retaliatory in violation of the Federal Fair Housing Act (42 U.S.C. § 3601 et seq.)

## JURISDICTION AND VENUE

2. Jurisdiction over this case lies in this Court pursuant to the Federal Fair Housing Act. 42 U.S.C. §3613 and 28 U.S.C. §1331.

3. All of the parties reside in Westchester County, New York. Accordingly, venue is properly sited here pursuant to 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff Community Living is a not-for-profit corporation incorporated in the State of New York. It provides housing for people with developmental disabilities in Westchester County. Its principal office is located in Westchester County.

5. Defendant Board of Directors of Defendant Bedford Plaza Tenants Corp. is the cooperative board of the building located at 50 Barker Street, Mt. Kisco, New York. Its principal office is located in Westchester County.

## FACTS

### A. Community Living and the people that it serves.

6. Community Living provides housing to 140 persons with developmental disabilities in Westchester County, along with service coordination to the people residing in the housing.

7. The people residing in Community Living housing cannot, because of their disability, access housing on their own, and need the services, supervision and assistance provided by Community Living in order to be able to reside in a residential setting.

8. Because of their disability, people with developmental disabilities like those receiving services from Community Living need the assistance of organizations like Community Living in order to access housing in the community.

B. Community Living and 50 Barker Street prior to the previous action.

9. Community Living currently owns nine units at the Bedford Plaza cooperative located at 50 Barker Street, Mt. Kisco, New York.

10. Community Living houses people with developmental disabilities in all of those apartments.

11. Community Living did not need the approval of the defendant Board of Directors to purchase the apartments.

12. The apartments each had bedrooms housing persons with developmental disabilities by gender (e.g., there are male apartments and female apartments).

13. Two of the developmentally disabled residents of the Barker Street apartments, Jennifer and Hart, fell in love and married in September, 2005.

14. As can be expected, Jennifer and Hart wanted to live together as husband and wife, rather than in separate sex-segregated apartments.

15. To that end, Community Living sought to purchase an apartment at 50 Barker Street for Jennifer and Hart so they could live together as husband and wife.

16. In September, 2005, Community Living contracted with the owner of a unit at 50

Barker Street to purchase that unit.

C. The previous action between the parties.

17. In order to purchase the unit at 50 Barker Street, Community Living had to make an application to the defendant Board of Directors.

18. The Board of Directors initially refused to consent to the sale of the unit to Community Living.

19. Thereafter, Community Living filed an action in this Court against the defendants entitled Community Living Corporation v. Board of Directors of Bedford Plaza Tenants Corp., et al., 06 CV 0676 (SCR) under the Federal Fair Housing Act seeking an order directing the defendant Board of Directors to approve the sale of the unit to Community Living.

20. In March, 2006, the parties settled the action and the defendant Board of Directors agreed to approve the sale of the unit to Community Living.

D. The actions of the defendant Board of Managers and Bedford Plaza residents since the action.

21. Apparently unhappy that they felt compelled to agree to the sale of the unit to Community Living, defendant Board of Directors started a campaign after the settlement aimed at seeking to evict Community Living from one or all of its apartments at Bedford Plaza.

22. A tenant named Mrs. Ryan consistently complained about music that she alleged emanated from the apartment above her apartment, Unit 635.

23. That apartment is owned by Community Living and is occupied at present by developmentally disabled residents Brian, John, and Hart, the abovementioned resident who married Jennifer and will be leaving that apartment shortly to live with his wife in the apartment Community Living acquired as a result of the previous lawsuit.

24. Mrs. Ryan apparently did not like the residents of Unit 635, barging in on them at one point and yelling at them that the apartment was dirty and that they were making noise. On another occasion, Mrs. Ryan verbally accosted Hart while he was waiting at a bus stop near the apartment.

25. Another time, Mrs. Ryan complained about loud music coming from Unit 635 when, in it actuality, it was coming from the next door apartment.

26. As a result of Mrs. Ryan's complaints, on January 5, 2007, the Board of Directors sent a letter to Community Living complaining about alleged loud noises from Apartment #635.

27. The letter, which did not state the date and times the noises allegedly occurred, threatened Community Living with eviction if the noises did not cease.

28. With the intervention of Community Living, the noises ceased and Mrs. Ryan was satisfied with the intervention by Community Living.

29. After the Board of Directors' January 5, 2007 letter and at the request of the Board of Directors, Community Living and the Board of Directors met on February 28, 2007 to discuss issues between the parties.

30. At the meeting, Community Living advised the Board of Directors that noise emanated from other apartments in the building besides Apartment # 635 and that there were no attempts to evict the residents in those apartments.

31. Many Bedford Plaza tenants allow their doors to slam, allow their televisions and radios to operate with a blaring amount of noise, and leave children screaming and unattended who run on the landscaped areas, and there have been no attempts to evict these persons.

32. The Board of Directors at the February 28, 2007 meeting also advised Community

Living that it believed that the Community Living residents were spreading bedbugs in the building.

33. A common prejudice held by people is that people with mental retardation and developmental disabilities spread bed bugs, an accusation that has been leveled by Bedford Plaza tenants against Community Living's residents.

34. Community Living advised the Board of Directors that it knew that bedbugs were coming from another apartment not owned by Community Living and that Community Living was having its apartments treated, unlike the tenants of other apartments in the building.

35. Roach infestations coming from other apartments have also been common at Bedford Plaza.

36. Community Living also told the Board of Directors that some of the Bedford Plaza tenants had been rude to Community Living's residents and verbally mistreated some of the Community Living residents.

37. Indeed, the superintendent of the building confirmed that some of the Bedford Plaza tenants had mistreated Community Living residents.

38. Bedford Plaza tenants argue with the Community Living residents, use mean insensitive comments such as "retards" or "crazy ones" aimed at the Community Living residents, and have accused Community Living residents of everything from stealing laundry baskets to throwing banana peels in the lobby.

39. In spite of the meeting, the Board of Directors continued to harass Community Living.

40. On May 11, 2007, the managing agent for Bedford Plaza at the direction of the Board

of Directors sent a letter to Community Living stating that some of its terrace enclosures "are in a state of disrepair."

41. On May 16, 2007, Community Living responded back with a letter and photographs demonstrating that the terrace enclosures were in excellent shape.

42. Community Living never heard back from the Board of Directors again on the terrace enclosures.

43. On August 30, 2007, the attorneys for the Board of Directors sent a letter to Community Living complaining that bedbugs were coming from a Community Living apartment.

44. In a letter back to the Board of Directors' attorney dated September 18, 2007, Community Living advised the Board of Directors that the bedbugs had emanated from an apartment it did not own, that one of its apartments which it had treated received bedbugs after a neighboring apartment had been treated, and that the Board of Directors was doing nothing regarding apartment owners that refused to have their apartments treated and, in particular, a squalid apartment occupied by vagrants on the fourth floor that was directly below the Community Living apartment complained about by the Board of Directors.

45. In its September 18, 2007 letter to the attorney for the Board of Directors, Community Living also complained that its residents were still being harassed by Bedford Plaza tenants, and that the Board of Directors had done nothing to stop the harassment after having been asked to do so at the previous February 28, 2007 meeting.

46. A day after the letter, on September 19, 2007, the Board of Directors wrote to Community Living accusing it of spreading bedbugs in the building, along with other matters.

47. None of the complaints of the Board of Directors contained any specific times and

dates, and in a letter dated September 27, 2007, Community Living denied the charges and requested a meeting.

48. The Board of Directors have failed to respond to Community Living's request for a meeting.

49. Finally, Community Living and, particularly, a Community Living resident residing in unit 635 named Brian have been singled out for harassment by a Bedford Plaza tenant who has made it clear that he does not want to live with people with mental retardation and developmental disabilities.

50. Bedford Plaza tenant Matthew Levito has engaged in a e-mail campaign to the president of the Board of Directors constantly complaining about noise emanating from Brian and from the drivers of some of the vans serving Community Living.

51. Brian is a 28 year old man diagnosed with Asperger's Syndrome and an Organic Personality Disorder who has lived at Bedford Plaza since 2004. His behavior has remained consistent during the three years that he lived at Bedford Plaza.

52. Due to his disabilities, Brian is a talkative individual who speaks in a loud, boisterous tone.

53. Although Brian is friendly, and is not harmful to persons or property, but has had several negative encounters with other Bedford Plaza tenants and does not understand why they are angry at him.

54. Brian is extremely sensitive, and attempts to evict him would only exacerbate his fears about his neighbors and his ability to trust others, undermining the work of his therapist.

55. If evicted, Brian would lose his home, and would lose his programmatic means to

remain in the community.

56. However, there are other Bedford Plaza tenants who are just as loud or louder than Brian who have not been subjected to complaints by either Mr. Levito or the Board of Directors.

57. Brian's noise does not constitute a threat to the safety of other Bedford Plaza residents or property.

58. On August 9, 2007, Mr. Levito told Lamin Sisay, an employee of Community Living, that with regard to Brian and the other Community Living residents like Brian, "these people shouldn't live here; they should get out."

59. Mr. Levito has engaged in a persistent e-mail campaign against Brian and Community Living to both Community Living and the president of the Board of Directors, some excerpts of an e-mail dated October 16, 2007 reading as follows:

> "Good morning, Ms. Stile (in-house counsel for Community Living)
>
> I also left you a voice mail on this and tell Porcella (Executive Director for Community Living) to look for a fax, as if he gives a crap....
>
> My opinion of CLC (Community Living) is that you are an organization that has, under the guise of providing a service to needy individuals, carved out a business nitch whereby you and your upper managerial staff can earn a pretty good living while spending little on providing front line professional staffing to the persons who you propose to "care" for. Yes, you pepper your staff roster with a few high priced degree designations like "PhD" or "M.S. in Psychology" and the like to make it look good on paper and for NYS I'm sure. But the proof of your success is where the rubber meets the road and that is on the grounds of Bedford Plaza....
>
> I look forward to having you and CLC remain consistent in your response to my complaints about your organization and that is **DO**

**NOTHING."**

60. After and based on Mr. Levito's last e-mail to Community Living and the Board of Directors, the attorneys for the Board of Directors on October 26, 2007 sent a letter to Community Living advising it that it had to appear at a public hearing of the Board of Directors on November 28, 2007 at which time evidence would be heard regarding whether the Board of Directors would seek to evict Community Living from Unit 635 at 50 Barker Street, and that the Board of Directors would vote after the hearing as to whether to evict Community Living from the apartment.

61. The charges against Unit 635 include claims that Community Living van drivers played music and talked at "excessively loud levels", that residents Brian and Hart talked and/or shouted at excessively loud levels outside of the residence at certain times, and that a female Community Living client had allegedly urinated in public outside of the residence.

62. The charges do not contain any specific times and dates.

63. If the charges were accepted by the Board of Directors, it would also result in the eviction of Unit 635 resident John, a resident who is not subjected to any charges by the Board of Directors.

64. John is a 63-year old autistic man who is a quiet and pleasant individual.

65. If John were evicted, he would have no place else to go and would lose his programmatic means that enables him to live in the community.

66. In spite of harassment by other Bedford Plaza tenants including Mr. Levito, Community Living and its residents are being singled out for eviction by the defendant Board of Directors because of the disabilities of its residents in violation of the Federal Fair Housing Act.

67. The Board of Directors is acting in response to Mr. Levito, a Bedford Plaza tenant who does not want to live with people with disabilities, and even if, arguendo, the Board of Managers did not have any animus towards people with disabilities, its actions in response to Mr. Levito and other Bedford Plaza tenants with animus towards people with disabilities is in violation of the Federal Fair Housing Act.

68. The Board of Directors' actions all occurred after Community Living asserted its rights under the Federal Fair Housing Act in its action in this Court in 2006.

69. Prior to 2006, Community Living enjoyed a good relationship with Bedford Plaza.

70. The Board of Directors' continued harassment of Community Living after Community Living filed its action under the Federal Fair Housing Act, leading to the Board's attempts to evict Community Living from Unit 635, is in retaliation for Community Living's filing of the Federal Fair Housing Act lawsuit in 2006 and are thus, by itself, in violation of the Federal Fair Housing Act.

71. As resident Brian's behavior has been the same through the time he has lived at Bedford Plaza, both before and after Community Living's 2006 lawsuit, the Board of Directors' actions against him at this time are in retaliation for Community Living's filing of the Federal Fair Housing Act lawsuit in 2006 and are thus, by itself, in violation of the Federal Fair Housing Act.

## COUNT I-FEDERAL FAIR HOUSING ACT

72. Plaintiff Community Living is a not-for-profit corporation that provides housing for people with mental disabilities, specifically and exclusively mental retardation and/or developmental disabilities.

73. Since plaintiff Community Living believes that persons for whom it provides housing are people with disabilities who have been injured by a discriminatory housing practice, plaintiff Community Living is an "aggrieved person" with standing to bring this action under the Federal Fair Housing Act pursuant to 42 U.S.C. §3602(i).

74. Since the residents of the apartment in issue are persons with a mental impairment which substantially limits their major life activities, have a record of having such an impairment and are regarding as having such an impairment, these people are protected under the Federal Fair Housing Act. 42 U.S.C. §3602(i)(2).

75. The proposed residents of the apartment at issue are diagnosed with mental retardation and/or developmental disabilities who require residential services with supervision, support and assistance to enable them to achieve the goal of integration into the community. The residents have an impairment which substantially limit their major life activities, in that they are or have been unable to engage in self-care tasks which are central to activities of daily living such as attending to meals, grooming, cleaning the home, or carrying out personal or household chores independently. Each person receives Social Security Disability and/or Supplemental Security Income due to their disability.

76. Pursuant to the Federal Fair Housing Act, it is unlawful "to discriminate in the sale... or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer... or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented or made available; or (C) any person associated with that buyer or renter. 42 U.S.C. §3604(f)(1).

77. Pursuant to the Federal Fair Housing Act, it is also unlawful to discriminate against

any person in the terms, conditions, or privileges of sale or rental of a dwelling because of disability. 42 U.S.C. §3604(f)(2).

78. In seeking to evict Community Living and its residents from Unit 635 at 50 Barker Street and forcing Community Living to subject itself to a public hearing based upon conduct that is engaged in by other residents of Bedford Plaza and in response to neighbors who have animus towards people with disabilities, the defendant Board of Directors have acted in a discriminatory manner in violation of the Federal Fair Housing Act in that it has singled out Community Living for special unfavorable treatment because of the disabilities of its residents and has responded to the animus of Bedford Plaza tenants towards people with disabilities.

79. Under 42 U.S.C. §3617, it is also a discriminatory act to interfere with the rights of people with disabilities to housing based upon their having previously asserted a claim under the Federal Fair Housing Act.

80. In seeking to evict Community Living and its residents from Unit 635 at 50 Barker Street and forcing Community Living to subject itself to a public hearing after Community Living had previously filed an action pursuant to the Federal Fair Housing Act against the Board of Directors, the defendant Board of Directors have acted in retaliation to Community Living because of the previous Federal Fair Housing Act lawsuit it had filed against it and thus in violation of the Federal Fair Housing Act.

WHEREFORE, it is respectfully requested that this Court:

1) Issue an order directing the defendant Board of Directors to cease its attempts to evict Community Living and its residents from 50 Barker Street, Unit 635, Mount Kisco, New York, including cancelling its scheduled hearing aimed towards that goal.

2) Award compensatory damages to plaintiff.

3) Award attorneys fees to the plaintiff.

4) Such other relief as this Court deems appropriate.

Dated: Garden City, New York
November 16, 2007

MORITT HOCK HAMROFF & HOROWITZ LLP
By: _____
ROBERT L. SCHONFELD
Attorneys for Plaintiff
400 Garden City Plaza
Garden City, New York 11530
(516) 542-0088
